# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6124 | **DATE** | 1/27/2004 |
| **CASE TITLE** | Lucy Givens vs. Ernesto Velasco et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendant's Motion for Summary Judgment [#55] is hereby **granted**. *AK*
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 28 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 64 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/27/2004 date mailed notice | |
| | courtroom FT/*pcy* deputy's initials | Date/time received in central Clerk's Office | | mailing deputy initials |


JAN 2 8 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LUCY GIVENS, as next friend of )
and Independent Administrator of )
the Estate of )
DONALD BASS, )
)
Plaintiff )
) No. 99 C 6124
v. )
)
ERNESTO VELASCO, Director of the ) Judge Arlander Keys
Cook County Department of )
Corrections, the County of Cook, a )
body politic, Superintendent )
Johnson of the Cook County )
Department of Corrections, )
Superintendent Edwards of the Cook )
County Department of Corrections, )
Deputy John Doe and Deputy Richard )
Roe Correctional Officers for the )
County of Cook, Mark Howard, Carlos )
Rocha, A.J. Bibbs, Pedro Barrios, )
and Theodore Holmes, Individually )
or in their official capacity. )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Ernesto Velasco's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Lucy Givens, the mother of the deceased, Donald Bass, ("Plaintiff,") sued Defendant Ernesto Velasco and other officials of the Department of Corrections staff under 42 U.S.C. § 1983 ("Section 1983") for allegedly violating Plaintiff's

64

constitutional and civil rights. Before the court are Defendant's Request to Strike Plaintiff's Response to Statement of Uncontested Facts and Defendant's Motion for Summary Judgment. For the reasons set forth below, the Court grants Defendant's motion to strike and grants Defendant's motion for summary judgment.

## UNDISPUTED FACTS[1]

On July 27, 1998, Plaintiff was arrested by the Northfield Park Police Officers, remanded by the Criminal Court into custody of the Cook County Sheriff and incarcerated at the Cook County Jail ("Jail"). On September 17, 1998, Plaintiff was assigned to and incarcerated in Division 9 of the Jail. (Defendant's Rule 56.1 Statement of Facts, pp.1-2.)

On that date, and prior to and subsequent to that date, Cook County Correctional Officers were in control and ran the divisions and tiers of the Jail. At no time did any inmates or gang members ever control or in any way participate in any activities concerned

---

[1] The facts set forth below are taken from Defendant's Rule 56.1 Statement of Facts, which, as set forth infra, were not properly disputed by Plaintiff in accordance with Local Rule 56.1(b)(3).

with running the Jail. (Rocha Dep., Ex. B to Defendant's Rule 56.1 Statement of Facts, pp. 47-48.)

At no time on, prior to, or subsequent to September 17, 1998, were inmates allowed to make or possess any type of weapon or instrument that could be used as a weapon, nor were inmates provided with, or allowed to possess, materials that could be used as a weapon or used to make any instrument that could be used to cause harm. During this same time period, Defendant Velasco and correctional officers had a zero tolerance policy for any weapons or materials that could be used as a weapon, and if any inmate possessed such a weapon or materials, it was immediately confiscated and the inmate would be disciplined. (Bibbs Dep., Ex. A to Defendant's Rule 56.1 Statement of Facts, pp. 26-28.)

Correctional officers actively conducted shakedowns and inspections of cells to ensure that there were no weapons, prohibited materials or contraband in the Jail or available to inmates. (Bibbs Dep., Ex. A to Defendant's Rule 56.1 Statement of Facts, pp. 26-28; Rocha Dep., Ex. B to Defendant's Rule 56.1 Statement of Facts, pp. 37, 44.) It was also the Jail's custom or policy that, if a fight occurred, correctional officers immediately intervened, broke up the fight, and disciplined those inmates who

3

were involved in the fight. (Bibbs Dep., Ex. A to Defendant's Rule 56.1 Statement of Facts, pp. 38-39.)

Ms. Lucy Givens, the mother of the Plaintiff, had two to three daily telephone conversations with her son from July 1998 through September 1998. During these conversations, Plaintiff never indicated to Ms. Givens that inmates or gangs had weapons, access to weapons, or intended to harm or use a weapon upon him. Yet, Ms. Givens was concerned and telephoned Superintendent Edwards and expressed her concern regarding the Plaintiff's welfare. Superintendent Edwards met with Plaintiff and requested that he identify individuals, if any, that may have been "bothering" him so that he could take action and address any issues or concerns pertaining to Plaintiff's well-being. However, Plaintiff refused to identify any individuals that may have been bothering him, or to cooperate at all with Superintendent Edward's investigation into the matter. Plaintiff informed Ms. Givens that he was not worried about the actions or the conduct of the fellow inmates and informed her, "I am not worried about that," and "Ma, don't worry about it." At no time did anyone ever attempt to inform Defendant Ernesto Velasco about any issues or concerns related to Plaintiff, his health or well being, or conditions at the Jail. (Givens, Dep.,

Ex. C to Defendant's Rule 56.1 Statement of Facts, pp. 14, 47, 50-53, 60-61.)

On September 17, 1998, at about 4:30 pm, Plaintiff confronted a correctional officer, refused to follow the officer's directions to line up for his dinner, used profanity and argued with the officer. At approximately 6:00 pm or 6:30 pm, Plaintiff was angry that someone had hung clothes out to dry near his cell. Plaintiff confronted about 15 fellow inmates and said, "I told you mother fuckers about this, about putting stuff in front of my cell," and he kept saying "Now I'm gonna kill one of you's." (Rocha, Dep., Ex. B to Defendant's Rule 56.1 Statement of Facts, pp. 17-19, 22-24.)

Plaintiff then took the clean wet blankets and sheets off the second floor railing and threw them to the ground. (Bibbs, Dep., Ex. A to Defendant's Rule 56.1 Statement of Facts, p. 34.) Plaintiff initiated a fight by grabbing one inmate by the shirt and it quickly escalated into a fight involving additional inmates. (Rocha, Dep., Ex. B to Defendant's Rule 56.1 Statement of Facts, pp. 12, 16, 17.)

The incident happened suddenly, and provided no warning or notice to Defendant Velasco, or any of the jail personnel or correctional officers prior to its occurrence. (Rocha, Dep., Ex.

5

B to Defendant's Rule 56.1 Statement of Facts, p. 44.) Correctional officers immediately responded to the fight, which only lasted about two minutes. (Rocha, Dep., Ex. B to Defendant's Rule 56.1 Statement of Facts, pp.42-44; Bibbs, Dep., Ex. A to Defendant's Rule 56.1 Statement of Facts, p. 35.) Correctional officers opened the interlock door that secures the tier and removed Plaintiff from the tier. (Rocha, Dep., Ex. B to Defendant's Rule 56.1 Statement of Facts, p. 29.) Correctional officers called for emergency medical care, and an ambulance soon arrived and rendered medical care to Plaintiff. (Rocha, Dep., Ex. B to Defendant's Rule 56.1 Statement of Facts, p. 50.) Defendant Velasco was not present at this incident, and did not participate in the events that gave rise to the instant case. ( Rocha, Dep., Ex. B to Defendant's Rule 56.1 Statement of Facts, pp. 32, 50; Bibbs, Dep., Ex. A to Defendant's Rule 56.1 Statement of Facts, pp. 29-30.)

Plaintiff died on September 17, 1998, and subsequently Lucy Givens filed the underlying instant complaint. She has no actual knowledge about the underlying incident or any of the events that she alleges occurred in her complaint that give rise to the case at hand. Ms. Givens does not have knowledge and is unaware of the existence of any policies or procedures that may have caused or

contributed to any violation of Plaintiff's rights, contributed to Plaintiff's death, or in any way caused harm to Plaintiff. Ms. Givens has never had or attempted to have any contact with Defendant Velasco and stated that she has "Never heard of him." (Givens, Dep., Ex. C to Defendant's Rule 56.1 Statement of Facts, p. 60.)

**PROCEDURAL HISTORY**

Plaintiff filed suit against the County of Cook, Cook County Department of Corrections Director Ernesto Velasco, Cook County Department of Corrections Superintendents Johnson and Edwards, and inmates Mark Howard, Carlos Rocha, A.J. Bibbs, Pedro Berrios and Theodore Holmes on September 22, 1999, alleging that Defendants violated the rights of Plaintiff under the Civil Rights Acts, Section 1983 and the Constitution under the Fourth, Fifth, Eight and Fourteenth Amendments. Subsequently, Cook County was voluntarily dismissed from this action and service was not effectuated upon Superintendents Edwards and Johnson. The inmate defendants were served while in custody, but has not appeared or filed an answer.

7

Defendant Velasco filed a motion for summary judgment on September 2, 2003. Plaintiff's motion for leave to file additional pleadings in response to Defendant's reply was denied.

**DISCUSSION**

The Court grants Defendant's motion for summary judgment. There are major procedural defects to Plaintiff's response. However, even without these defects, Plaintiff's response would fail for substantive reasons.

I. **Summary Judgment Standards**

A summary judgment movant has the burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment must be granted when "there is no genuine issue as to any material fact and . . .the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.56(c). The moving party's burden is met by showing an absence of evidence on some element on which the nonmoving party bears the burden of proof at trial. See Celotex, 477 U.S. at 322-23. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denial of the pleadings, which demonstrates that there is a genuine issue for trial. Howland v. Kilquist, 833 F. 2d 639, 642 (7th Cir. 1987). A genuine issue of material fact exists when, in viewing the

record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Typically, this means that a non-moving party must do more than attack the credibility of the testimony supporting their opponent's motion, because "discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion." Id. at 256-57.

**II. Procedural Issues**

Plaintiff's response to Defendant's motion is procedurally flawed because it did not provide a systematic response to the numbered paragraphs in Defendant's statement of undisputed facts, as required by Local Rule 56.1. This defect is fatal to Plaintiff's response.

The Northern District of Illinois requires a party seeking summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. L.R. 56.1(a)(3). Similarly, Northern District of Illinois Local Rule 56.1(b)(3)(A) requires a party opposing summary judgment to submit a corresponding document containing a "response to each numbered paragraph in the moving party's statement, including, in

9

the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Moreover, Rule 56.1(b)(3)(B) specifically warns that "all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

These rules are imposed and enforced in order to streamline the process of summary judgment, and to highlight for the Court those facts that are actually at issue. See Herman v. City of Chicago, 870 F.2d 400, 404 (7th Cir. 1989). To that end, the Seventh Circuit has "repeatedly upheld strict enforcement of these rules. . .when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994).

Here, Plaintiff's response to Defendant's Statement of Material Facts does not fulfill the requirements of Local Rule 56.1. In Plaintiff's response, Plaintiff denies twenty-three of the thirty-two Statements of fact, but does not provide any factual support for these denials or make any specific references to the record, as required by L.R. 56.1(b)(3)(A). Local Rule 56.1's enforcement provision provides that, when a responding party's

statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for the purposes of the motion. N.D. Ill. L.R. 56.1(b).

An answer in a LR 56.1(b) response that does not deny the allegations in the numbered paragraph of a LR 56.1(a) statement, with citations to supporting evidence in the record, is deemed an admission. Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir.2000); LR 56.1(b)(B). Therefore, the facts in Defendant's 56.1 statement are taken as admitted for purposes of Defendant's motion for summary judgment.

Additionally, Plaintiff makes thirty-five statements of additional facts, which are not in response to Defendant's statement of facts. The Court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." See Smith v. Lamz, 321 F. 3d 680, 683 (7th Cir. 2003), citing Bordelon v. Chicago School Reform Bd. of Trustees, 233 F. 3d 524, 529 (7th Cir. 2000). Therefore, the Court grants Defendant's Request to Strike Plaintiff's Response to Statement of Uncontested Facts.

### III. Substantive Issues

Defendant raises two substantive defenses to Plaintiff's claim, both of which, based on the undisputed facts in the record, require entry of summary judgment in favor of Defendant. First, Defendant asserts that he is a non-suable entity. Second, Defendant argues that Plaintiff fails to sufficiently allege a custom or practice of the Defendant, which defeats his Section 1983 claim.

The Plaintiff seeks to impose liability upon Defendant Velasco in his official capacity as Director of the Cook County Department of Corrections.[2]

#### A. Defendant Must Be A Legal Entity

A defendant must have a legal existence, either natural or artificial, to be subject to suit. <u>Jackson v. Village of Rosemont</u>, 536 N.E. 2d 720, 723 (1988). Departments within a governing unit, such as the city or county, are not suable

---

[2] Plaintiff Lucy Givens states in her Response that she "seeks to impose liability upon the Department of Corrections through their Executive Director as a result of what will be seen as impermissible constitutional violations. (Plaintiff's Resp. p. 6)

12

entities because they lack the necessary separate legal existence. Jordan v. City of Chicago, Department of Police, 505 F. Supp. 1, 4 (N.D.Ill.1980). Departments of a governing body which have no legal existence separate from the governing body cannot be sued under Section 1983. Glass v. Fairman, 992 F.Supp. 1040, 1043 (N.D.Ill.1998). As Defendant points out, and Plaintiff does not dispute, the Cook County Department of Corrections is not a legal entity. Rather, it is a department created within the office of the Cook County Sheriff. 55 ILCS 5/3-150002 and 5/3-15003. Therefore, Plaintiff's theory of liability against Defendant must fail.

Even if the Cook County Department of Corrections were a legal entity, Defendant's claim under Section 1983 would still fail.

### B. Government Policy or Custom

Section 1983 creates a cause of action based upon personal liability and is predicated upon fault.[3] An *individual* cannot be

---

[3] 42 U.S.C. Section 1983 provides in pertinent part as follows: "Section 1983. Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. McBride v. Soos, 679 F.2d 1223, 1227 (7th Cir.1982). Pursuant to this requirement, courts have rejected § 1983 claims based upon a *respondeat superior* theory of liability. See Polk Co. v. Dodson, 454 U.S. 312, 325 (1981). Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary. Rizzo v. Goode, 423 U.S. 362, 371 (1976).

To succeed on an official capacity claim under Section 1983, a plaintiff must allege that he suffered injuries of a constitutional magnitude as the direct result of an official policy, custom or practice. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). While the question of what actions constitute a "policy or custom" is not fully resolved by the courts, see Bowen v. Watkins, 669 F.2d 979, 989 (5th Cir.1982), it is clear that a well-settled municipal practice can establish a "custom or usage" with the force of law.

---

equity, or other property proceeding for redress."

The Seventh Circuit has set forth three instances in which it could be said that a municipality violated the civil rights of a person because of a policy: (1) an express policy, that when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law;" or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority." <u>Baxter by Baxter v. Vigo County School Corp.</u>, 26 F. 3d 728, 735 (7th Cir. 1994)(citations omitted).

In the case at hand, Plaintiff has failed to set forth facts to support any of the three requirements as set forth in <u>Baxter.</u> Plaintiff fails to provide any factual support to establish the existence of a municipal "express policy" or "widespread practice" (the first two factors set forth in <u>Baxter</u>) that caused a constitutional deprivation to Plaintiff. Plaintiff alleges that Defendant was engaging in "...various acts, actions and conspiracies..." "pursuant to government custom, practice and policy which was so permanent and well settled as to become policy which had the force and effect of law." (Plaintiff's Complaint,

p.5). But Plaintiff proceeds to offer no factual support for this allegation.

Plaintiff states that there were several particular policies and practices in force which led to Plaintiff's constitutional deprivation. Plaintiff alleges "That it was and is a common practice and policy of the County of Cook Department of Corrections to house prisoners in Cell without regard to their need or requirements such that an individual such as Donald Bass would be housed with other inmates who were dangerous and threatening to him." (Plaintiff's Complaint, pp. 23-24). However, Plaintiff has offered no facts or evidence to support that either Plaintiff was housed in a dangerous situation or that any such "common practice" existed. Similarly, Plaintiff further alleges that "(a)s a direct and proximate result of the custom and practice of overcrowding and the composition of the cell by housing pre trial detainee in such a manner as to allow associations to develop or form groups it was and should have been well known and apparent that arguments, fights and disagreements among residents were frequent, violent and often times resulted in injuries to residents and staff." (Plaintiff's Complaint, p. 12). The facts do not support that there was such a custom and practice, or that arguments and fights among inmates frequently or

16

violently erupted. Nor do the facts support Plaintiff's claim that "(a)s a direct and proximate result of the custom, policy and practice of cell placements, housing detainees in need of treatment and medication with those that do not require such treatment, ignoring warnings and notices regarding the needs for medication and treatment, failing to heed the warnings of the family and friends of Donald Bass in regards to fear of attack and safety and otherwise disregarding the information that was at hand Donald Bass was injured." (Plaintiff's Complaint, pp.8-9, 20-21). At no time did Plaintiff, or his family members, or any individual, attempt to inform or warn Defendant about any issues or concerns related to Plaintiff's health, well being or Jail conditions. Plaintiff never indicated that individuals were "bothering" him, and refused to cooperate with Superintendent Edwards.

Plaintiff also fails to set forth any facts showing that a constitutional injury was caused by a person with 'final policymaking authority.' Baxter, 26 F. 3d at 735. The facts do not support that Defendant Velasco caused any constitutional injury to Plaintiff.

On the contrary, the undisputed facts establish that the underlying incident was not the result of a common practice or

policy, but an isolated event arising from Plaintiff confronting his fellow inmates by saying, "I told you mother fuckers about this, about putting stuff in front of my cell" and "I'm gonna kill one of you's." The incident happened suddenly, ended quickly, and provided no warning or notice to Defendant, correctional officers, or other jail personnel at any time prior to its occurrence. Correctional officers responded to the situation immediately. They ran to provide assistance to Plaintiff and called for emergency medical care. Therefore, Plaintiff cannot succeed on a Section 1983 official capacity claim against Defendant Velasco.

### CONCLUSION

Plaintiff's response failed to comply with Local Rule 56.1. Therefore, the facts in Defendant Ernesto Velasco's statement of undisputed facts are deemed admitted. Additionally, the Court granted Defendant's Motion to Strike Plaintiff's Response. Based on the facts in Defendant's statement of facts, Defendant is entitled to Summary Judgment in his favor.

Even if Plaintiff had filed a proper response that fully comported with Local Rule 56, Defendant would still be entitled to Summary Judgment because Defendant is a non-suable entity and because Plaintiff fails to establish the necessary elements of a

Section 1983 official capacity claim and, therefore, Defendant is entitled to judgment as a matter of law.

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment be, and the same hereby is, GRANTED.

Arlander Keys
Arlander Keys
United States Magistrate Judge

DATED: January 27, 2004